**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                    :
JOSEPH P. GANIM,                    :
                                    :       Civil Action No.
              Petitioner,           :       06-2957 (RBK)
                                    :
       v.                           :       **O P I N I O N**
                                    :
THE FEDERAL BUREAU OF PRISONS,      :
                                    :
              et al.,               :
                                    :
              Respondents.          :
_____:


**APPEARANCES:**

       JOSEPH P. GANIM, Petitioner pro se
       #14466-014
       FCI Fort Dix
       P.O. Box 1000
       Fort Dix, NJ  08640

**ROBERT B. KUGLER, United States District Judge**

       On June 29, 2006, Petitioner JOSEPH P. GANIM (hereinafter

"Petitioner"), currently confined at the Federal Correctional

Institution (hereinafter "F.C.I."), Fort Dix, New Jersey, filed an

application for a Writ of Habeas Corpus, pursuant to 28 U.S.C. §

2241, naming the Federal Bureau of Prisons (hereinafter "BOP") and

various other entities as Respondents.  See Ganim v. Federal Bureau

of Prisons, 06-2957 (RBK), Docket Entry No. 1.  On July 31, 2006,

this Court issued an Order (hereinafter "July Order"), see id.,

Docket Entry No. 5, and accompanying Opinion (hereinafter "July

Opinion") denying Petitioner's request for a Writ of Habeas Corpus. See id., Docket Entry No. 4.  On August 11, 2006, Petitioner filed with this Court his motion for reconsideration with respect to the July Order (hereinafter "Motion").  See id. Docket Entry No. 7.  On August 17, 2006, Petitioner filed his Notice of Appeal from the July Order with the United States Court for the Third Circuit.  See id., Docket Entry No. 6.

After carefully examining Petitioner's Motion, this Court denies it for failure to state grounds for reconsideration.


## STANDARD OF REVIEW

There are four basic grounds upon which a motion for reconsideration may be granted:  (a) to correct manifest errors of law or fact upon which the judgment was based; (b) to present newly-discovered or previously unavailable evidence; (c) to prevent manifest injustice; and (d) to accord the decision to an intervening change in prevailing law.  See 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2810.1 (2d ed. 1995); see also Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986)(purpose of motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence).  "To support reargument, a moving party must show that dispositive factual matters or controlling decisions of law were overlooked by the

court in reaching its prior decision." <u>Assisted Living Associates</u>
<u>of Moorestown, L.L.C., v. Moorestown Tp</u>, 996 F. Supp. 409, 442
(D.N.J. 1998).   However, mere disagreement with the district
court's decision is inappropriate on a motion for reconsideration,
and should be raised through the appellate process.   <u>Id.</u> (citing
<u>Bermingham v. Sony Corp. of America, Inc.</u>, 820 F. Supp. 834, 859
n.8 (D.N.J. 1992), <u>aff'd</u>, 37 F.3d 1485 (3d Cir. 1994); <u>G-69 v.</u>
<u>Degnan</u>, 748 F. Supp. 274, 275 (D.N.J. 1990)).   "The Court will only
entertain such a motion where the overlooked matters, if considered
by the Court, might reasonably have resulted in a different
conclusion." <u>Assisted Living</u>, 996 F. Supp. at 442.   Accordingly,
a district court "has considerable discretion in deciding whether
to reopen a case under Rule 59(e)." <u>Edward H. Bohlin, Co. v.</u>
<u>Banning Co., Inc.</u>, 6 F.3d 350, 355 (5th Cir. 1993).

## BACKGROUND

The facts of Petitioner's underlying application resolved by
this Court's July Order were summarized by this Court as follows:

> Petitioner, who was sentenced to a term of imprisonment
> of [one] hundred and eight months, has been and is
> confined at the F.C.I. Fort Dix.  <u>See</u> Pet., Mem. at 1.
> On   August   10,   2005,   Petitioner   "requested   to   be
> transferred to [Otisville facility, which Petitioner
> deemed to be] a suitable FCI camp, which was closer to
> his home."  <u>Id.</u>   Petitioner based his request on the
> language of the Program Statement 5100.07 (hereinafter
> "P.S. 5100.07").  <u>See id.</u> at 2.  Petitioner's request was
> denied by the prison's Unit Manager, and the denial was
> based on the very same language of P.S. 5100.07.  <u>See id.</u>
> Petitioner . . . contest[ed] the reading of P.S. 5100.07
> suggested by the BOP.  <u>See id.</u> 4-5.  Petitioner also

> assert[ed] that the BOP failed to assess Petitioner's application in accordance with the factors suggested by the United States Court of Appeals for the Third Circuit in Woodall v. Fed. Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005). See id. at 6. In support of his application, Petitioner attache[d] letters from Petitioner's spouse and various other relatives asserting that traveling to the F.C.I. Fort Dix burdens their lifestyles and budget. See id., Exs. D-E. Petitioner, therefore, request[ed] transfer to Otisville, New York. See Pet., Mem. at 2.

See July Opinion at 2-3. In response to this Court's July Order dismissing his Petition, Petitioner filed the instant Motion. The Motion makes three TYPES OF arguments. First, Petitioner maintains that he duly exhausted his administrative remedies, although this contention has no effect on the issue at bar.[1] Second, Petitioner alleges that "P.S. 5100.07 is a 'blanket rule' under Woodall, in violation of 18 U.S.C. § 3621(b), yet it's unlawful application to . . . Petitioner's request was not addressed by the Court." Mot. at 3 (capitalization omitted). Lastly, Petitioner claims that the Court erroneously concluded that the Woodall standard was met by the BOP during the BOP's examination of Petitioner's request for transfer. See Mot., Parts II and IV.

---

[1]

The question of Petitioner's exhaustion of administrative remedies, same as Petitioner's reasons for not enlightening this Court as to the details of Petitioner's "BP-8, 9, 10 & 11" appeal(s), has no effect on this Court's decision with respect to the instant Motion, since denial of Petitioner's Petition was based on merits rather than on Petitioner's failure to exhaust. See July Opinion at 6 (stating that, "[e]ven if this Court is to presume that Petitioner duly exhausted his claims and merely omitted stating so . . . , Petitioner's claims lack merit" and proceeding with substantive analysis).

## DISCUSSION

### A.   <u>Woodall v. Federal Bureau of Prisons</u>, 432 F.3d 235

In <u>Woodall</u>, the inmate was sentenced to 30 months of imprisonment. Although the inmate's sentencing judge recommended that the inmate be placed in a halfway house for the final six months of his sentence, under the regulations, specifically, 28 C.F.R. §§ 570.20 and 570.21, the inmate could be placed in a Community Corrections Center (hereinafter "CCC") for no more than 11 weeks (since the regulations limited CCC placement to the final 10 percent of a sentence, not to exceed six months). The Court of Appeals for the Third Circuit found that the regulations were invalid because they expressly prohibited the BOP from consideration of the factors enumerated in 18 U.S.C. § 3621(b), and, therefore, were not a permissible construction of § 3621(b). The Third Circuit explained as follows:

> [u]nder [the umbrella provision,] 18 U.S.C. § 3621(b), the BOP is vested with authority to determine the location of an inmate's imprisonment. . . . [Under a] more specific provision, 18 U.S.C. § 3624(c), . . . the BOP[ has] to prepare prisoners for community re-entry by, <u>inter</u> <u>alia</u>, placing them in community confinement. . . . [O]n December 13, 2002, the Department of Justice Office of Legal Counsel ("OLC") issued a memorandum concluding that the BOP's practice of placing some prisoners in CCCs for all or significant parts of their sentences was contrary to the BOP's statutory grant of authority. The . . . memo concluded that the BOP did not have "general authority" under § 3621 [and the sole] authority to transfer a prisoner to a CCC [was] derived solely from § 3624, and that the [latter] statute limit[ed] residence in a CCC to the lesser of 10 percent of the total sentence or six months. On December 20, 2002, the BOP followed the OLC's advice and memorialized it. [Following

issuance of court decisions finding] this 2002 policy .
. . . contrary to the plain meaning of § 3621, . . . the
BOP proposed new regulations . . . limit[ing] CCC
placement to the lesser of 10 percent of a prisoner's
total sentence or six months.

Id. at 239-40.

Addressing the validity of this new regulations, the Third

Circuit found that

[t]he regulations [are invalid because they] do not allow
the BOP to consider the nature and circumstances of an
inmate's offense, his or her history and pertinent
characteristics, or most importantly, any statement by
the sentencing court concerning a placement
recommendation and the purposes for the sentence. And
yet, according to the text and history of § 3621, these
factors must be taken into account. The regulations are
invalid because *the BOP may not categorically remove its
ability to consider the explicit factors set forth by
Congress in § 3621(b)* for making placement and transfer
determinations.

Id. at 244 (emphasis supplied). However, the Third Circuit noted

"that, [while] the BOP *may* assign a prisoner to [the facility of

prisoner's preference, that] *does not mean that it must*." Id. at

251 (emphasis supplied). Rather, the BOP is merely required "to

consider . . . in good faith" whether to transfer an inmate, id.,

and, "[i]n making this decision, the BOP should consider § 3621

factors, as well as any other appropriate factors the BOP routinely

considers." United States v. Herrington, 2006 U.S. App. LEXIS

17915, at *22 (3d Cir. July 14, 2006) (quoting Woodall, 432 F.3d at

251). Thus, Woodall prohibits the BOP from *forefeiting its

authority* (a) to consider the statutory factors, or (b) to conduct

individualized good-faith analyses. See Woodall, 432 F.3d at 251.

**B.   Petitioner's Challenge as to P.S. 5100.07, as Drafted**

Petitioner alleges that this Court failed to recognize that "P.S. 5100.07 is a 'blanket rule' under <u>Woodall</u>, in violation of 18 U.S.C. § 3621(b)." The Court construes Petitioner's allegation as a claim that P.S. 5100.07 is invalid as drafted.[2]

In order to qualify as a statutorily invalid "blanket rule" under <u>Woodall</u>, a regulation or policy must prevent the BOP from

---

[2]

Petitioner's challenge to P.S. 5100.07, *as applied*, was conclusively resolved by this Court in its July Opinion. <u>See</u> July Opinion at 8-10. Petitioner's instant assertion that P.S. 5100.07 is invalid *as drafted* is qualitatively different from Petitioner's previous assertion that P.S. 5100.07 is invalid *as applied*. <u>See</u> <u>supra</u>, this Opinion, Part B. Generally, Petitioner's pleading shall set forth all relevant claims and facts, and no new claims or facts could be raised thereafter. <u>See</u> <u>Mayle v. Felix</u>, 125 S. Ct. 2562, 2566, 2570 (2005).

> Rule 2(c) of the Rules Governing Habeas Corpus Cases requires a . . . detailed statement. The habeas rule instructs the petitioner . . . to "state the facts supporting each ground." . . . A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to 'show cause why the writ should not be granted." § 2243. Under Habeas Corpus Rule 4, if "it plainly appears from the petition . . . that the petitioner is not entitled to relief in district court," the court must summarily dismiss the petition without ordering a responsive pleading. If the court orders the State to file an answer, that [answer] must "address [only] the allegations in the petition." Rule 5.

<u>Id.</u> Any instrument other than pleadings, be it a traverse or motion for reconsideration, is *not* a proper vehicle to set forth Petitioner's claims and facts. <u>See</u> <u>id.</u> However, since Petitioner's Petition stated a claim using similar language, although implying a different meaning, this Court, guided by the liberal standard of construction enunciated in <u>Estelle</u>, 429 U.S. at 106, addresses Petitioner's challenge to P.S. 5100.07, *as drafted*, under Section 3621(b), as clarified by <u>Woodall</u>.

exercising the BOP's authority to consider other factors listed in Section 3621(b).  Conversely, if the regulation or the policy is itself utilized as merely "a" § 3621(b) factor, the <u>Woodall</u> analysis is properly performed.  <u>See Woodall</u>, 432 F.3d at 244, 251; <u>accord</u> July Opinion at 12-13.  Nothing in the language of P.S. 5100.07 indicates that it cannot be utilized as "a" factor, or that it is a factor which is about to "swallow the rule" of the agency's discretionary power ensuing from Section 3621(b).

P.S. 5100.07 provides, in pertinent parts, as follows:

> Routine Transfers.  Redesignation of an inmate should generally result in a move closer to an inmate's release destination . . . In order to attempt to place an inmate near his or her release residence, redesignations should be made without regard to regional boundaries. . . . Redesignations between same security level institutions are discouraged, except, for CIM purposes, closer to home purposes, or other unusual circumstances. A "nearer to release" transfer should be incorporated with "lesser security" transfers whenever possible.  Once the inmate has been transferred within 500 miles of his or her release residence, no further  referrals should be made as a "nearer to release" transfer consideration.

This language does not interfere with or thwart the mandate of Section 3621(b) which governs placement and transfer determinations.  In fact, nothing in the language of P.S. 5100.07 limits the authority of the BOP to consider any § 3621(b) factor while initially designating an inmate to a facility, or while transferring an inmate who is approaching his or her release to a facility "within 500 miles of his or her release residence."  P.S. 5100.07.  In that respect, and contrary to Petitioner's contentions

that the Policy is a "categorical limitation," the provision contains no limitation of any kind.  The restraints contained in P.S. 5100.07 are of prudential nature, that is, the language of P.S. 5100.07 caps post-placement / post-transfer re-shuffling of those inmates who have been properly placed and/or properly transferred in accordance with Section 3621(b).  P.S. 5100.07 is an even-handed practicable observation that lack of basic finality (a) would unduly burdened the BOP if the agency has to keep re-validating the results of each transfer after such transfer was properly performed under § 3621(b), and (b) exposes inmates to the risk of living in a state of eternal transit.

Moreover, the *routine* transfer scheme set forth in P.S. 5100.07 expressly reserves the BOP's authority to conduct "unusual circumstances" transfers in case the inmate's post-routine-transfer situation changes so much as to affect one or more § 3621(b) factors.  See P.S. 5100.07 ("Redesignations . . . are discouraged[] except[] for . . . unusual circumstances").  Therefore, the directive of P.S. 5100.07 cannot qualify as a "blanket rule" in violation of Section 3621(b), as clarified by Woodall.  Rather P.S. 5100.07 is merely as a factor the BOP properly considers with respect to inmates' requests for transfer.  See July Opinion at 12-13.  Therefore, Petitioner's claim that this Court failed to recognize that "P.S. 5100.07 is a "blanket rule" is without merit.

**C.   Petitioner's § 3621(b) Arguments**

Petitioner asserts that this Court failed to recognize that the mandate of § 3621(b) was not followed by the BOP even though this fact should have been self-evident in view of Petitioner not being transferred as Petitioner requested,[3] since: (a) Judge Arterton listed Otisville first; (b) Petitioner was a "model inmate" deserving a transfer; and (c) the BOP's communication to Petitioner referred only to one or two factors listed in § 3621(b) rather than to every factor.

a.   Judge Arterton's Listing

According to Petitioner, this Court failed to recognize that the judicial suggestions were "clearly NOT considered when [the BOP

---

[3]

Petitioner presumes "that the . . . recommendation [of Judge Arterton giving the six locations] was likely considered by the BOP in the initial placement of . . . Petitioner at Fort Dix," the third of the six choices provided by Judge Arterton.  See Mot. at 6.  Yet, Petitioner presumes that Judge Arterton's suggestions were "clearly NOT considered when [the the BOP was] determining] whether or not [to] transfer . . . Petitioner [to Otisville]."  Id. (capitalization in original).  This Court sees no logic in Petitioner's conclusion since nothing in the language of §§ 3621(b)(4)(A) and 3621(b)(4)(B) indicates that the outcome of the consideration process with respect to initial placement must differ from that with respect to transfer.  To the contrary, the fact that Petitioner, after making a request for transfer, was placed in the facility expressly recommended by Judge Arterton indicates that the recommendations were both considered and followed.  The sole fact that Petitioner did not have to pack his belongings and spend a few hours riding a bus is as irrelevant to the issue of validity of administrative process as the fact of Petitioner's dissatisfaction with the outcome of his request for transfer.  Cf. Coades v. Kane, 1992 U.S. Dist. LEXIS 8844 (E.D. Pa. May 22, 1992) (an unfavorable decision per se is not the same as a denial of due process).

was] determining whether or not transfer . . . Petitioner," Mot. at 6, since Petitioner's location was not "bettered" by a transfer in accordance with Judge Arterton's "order of priority."[4]  See id.

Judge Arterton's recommendations as to the *location* of Petitioner's place of confinement are *irrelevant* to the § 3621(b) analysis.  The pertinent subsection of the provision unambiguously states that

> [t]he [BOP] . . . determines [the place of confinement] considering any statement by the court that imposed the sentence concerning the *purposes* for which the sentence to imprisonment was . . . warranted or recommending a *type* of . . . correctional facility.

§§ 3621(b)(4)(A) and 3621(b)(4)(B) (emphasis supplied).

Nothing in the language of the statute indicates, even remotely, that the *locale* of the facility recommended by the sentencing court should be considered by the BOP: the statute unambiguously addresses only the *purposes* of imprisonment and the corresponding *type* of the facility, so the sentencing court could

---

[4]     This argument is factually flawed since Petitioner sought a transfer *specifically* to Otisville in order to reduce the commute involved in the process of Petitioner's visitations.  See Pet., Exs. D, E.  Indeed, had the BOP followed Petitioner's opinion that "[t]he 'Statement by the court that imposed the sentence' . . . very clearly recommended that [Petitioner] be designated to the [facility] . . . in the sentencing court's 'order of priority,'" Pet. at 5-6, a "one-step betterment" in Petitioner's location would cause Petitioner to be transferred from Fort Dix, that is, Judge Arterton's *third* choice, to Devens, which was the *second* choice, thus *increasing* the commute undertaken by Petitioner's spouse by about 12.5 miles, see supra note 9, the outcome opposite to that expressly sought by Petitioner.  See Pet., Ex. D.

bring to the BOP's attention the court's opinion that the convict at issue is suitable for, say, a maximum security penitentiary or, in contrast, for a prison camp.[5]   See §§ 3621(b)(4)(A) and 3621(b)(4)(B); accord Woodall, 432 F.3d 235 (discussing a transfer from *one type* of facility to *another type* of facility).   Thus, Petitioner's argument that this Court failed to address the issue of Judge Arterton's suggestions has no merit.

      b.   The "Model Inmate" Status and the Nature of Offenses

    Next, Petitioner maintains that this Court unduly overlooked that fact that "Petitioner's [h]istory and [c]haracteristics, and the [n]ature and [c]ircumstances of [Petitioner's] offense were not considered [by the BOP] as required."[6]   Mot. at 6.

---

[5]

"[I]t is undisputed that, being placed right at the outset of his prison term in the F.C.I. Fort Dix, Petitioner had the 'recommendations as to *type* of facility made by the court' satisfied.   The mere fact that Petitioner was given the third rather than the first choice in the list of six cannot be read as an indication that the BOP was heedless to the opinion of Petitioner's sentencing bench." July Opinion at 14 (emphasis supplied).

[6]

However, Petitioner's Petition and Motion are silent as to any circumstances of Petitioner's offense or history and characteristics of Petitioner (other than Petitioner's "model inmate" status and family ties) that Petitioner believes the BOP should have considered but failed to do so.   See generally, Pet., Mem., Mot.   Since the Woodall holding unambiguously directs the agency to conduct a "good-faith" rather than a mechanical consideration of § 3621(b) factors, see Woodall,432 F.3d at 251, an inmate requesting a transfer cannot expect the BOP to consider those "history and characteristics" or the "nature of offense" factors that even the inmate himself is not able to articulate: finding otherwise would effectively strip the "individualized" analytical process enunciated in Woodall of any meaning.

In the case at bar, Petitioner's status as a "model inmate" and his close family ties were the sole "history and characteristics" factors expressly brought by Petitioner to the attention of the BOP, see Pet., Ex. D, and his "model inmate" status was *continuously* considered and reconsidered by the prison officials. See id., see also Pet., Exs. F-L.

The BOP is obligated to evaluate the inmate's history and characteristics in order to give preference to socially-alienated and/or socially-disadvantaged rather than to well-adjusted inmates.

> The purpose of [such transfers] is to help the inmate with the transition from prison life. Clearly, certain prisoners need more assistance with the transition than others. Those prisoners who are serving long sentences, who are uneducated or lack marketable job skills, who suffer from mental or physical ailments, or who lack any type of resources or support network outside prison likely need special support to ease their re-entry into society. In contrast, inmates . . . who are serving shorter sentences, for basically white collar offenses, who have assets, family support, education, and vocational skills are less likely to need as much assistance in their transition from prison to society.

Kleinman v. Fed. Bureau of Prisons, 2006 U.S. Dist. LEXIS 13502, at *10-11 (D.N.J. Mar. 29, 2006); see also Dilorenzo v. Fed. Bureau of Prisons, 2006 U.S. Dist. LEXIS 33514 , at *9 (D.N.J. May 15, 2006) ("[Petitioner] has indicated no special need for transitional placement; in fact, he has demonstrated strong employment prospects, family support, and an approved residence upon his release from prison"). Moreover, for the purposes of a routine transfer, the "history and characteristics" inquiry is (a) limited

to the inmate himself, and (b) expressly divorced from the issues related to the inmate's relatives.

> [An inmate]'s argument as to why he needs a [routine transfer] is not persuasive [if it is based on the matters related to the inmate's relatives]. While respectful of the havoc that results following the incarceration of a loved one, the Court reminds Petitioner that the focus of [a routine transfer] is on the prisoner and not the needs of the family. Petitioner has not articulated any circumstance that would warrant [an exception to the transfer rules] to ease his reentry into society, compared to the many federal prisoners who are poor, uneducated and untrained, and who are serving long sentences. Prisoners would certainly like the [transfer of their choice] and might even get a head start on tasks like finding a job or a home. . . . [But,] after reviewing many petitions like the instant one, the Court is left with the conclusion that in many cases the issue is not one of helping re-entry into society, but simply providing the inmate with a more favorable [term] of incarceration. See Sandin v. Conner, 515 U.S. 472 (1995). . . . It appears that Petitioner has misunderstood the purpose behind [these transfers]. The point of [these transfers] is not to assist family members, but rather to allow the prisoner to re-integrate into society.

Kleinman, 2006 U.S. Dist. LEXIS 13502, at *11-12; see also Dilorenzo, 2006 U.S. Dist. LEXIS 33514, at *9.  Given this standard, the fact that Petitioner was not transferred merely indicates that the factor of Petitioner's "history and characteristics" (a) was duly considered by the BOP (just as Petitioner requested, see Pet., Ex. D), but (b) given little weight since Petitioner does not indicate that he is a person in need of the BOP's assistance to re-integrate in the society upon his

release.[7]   While Petitioner might be displeased with the social goals underlying the BOP's routine transfers and prefer the scheme under which the BOP would be obligated to reward a "model inmate" by prioritizing this aspect of the inmate's "history and characteristics," or to allocate equal weight to every § 3621(b) factor, *nothing* in the language of the statute--or in the Third Circuit's opinion in <u>Woodall</u>--suggests that the BOP lacks discretion in setting the underlying social goals, same as nothing obligates the BOP to give every § 3621(b) factor the same importance.   All that is required on the part of the BOP is a "good-faith" consideration and if, as a result of such consideration, certain factor(s) are deemed barely relevant, the BOP's decision cannot be second-guessed by either the inmate affected or by the reviewing court.   <u>See</u> <u>Woodall</u>, 432 F.3d at 251.

In the case at bar, this observation is particularly relevant to the "nature and circumstances of Petitioner's offense" factor. Petitioner was convicted of sixteen counts of racketeering, bribery, extortion, mail fraud and tax fraud, <u>see</u> <u>supra</u>, note 1 (citing <u>United States v. Ganim</u>, 3:01cr263 (JBA)), and the sentencing judge recommended Petitioner to be placed in "a federal

---

[7]
Petitioner is a holder of a legal degree, ex-mayor of Bridgeport, aspiring governor of Connecticut and a person who, by his own admission, has "a real strong family, [and is] truly blessed in many ways."  Mark Pazniokas, <u>Ganim, After Arraignment</u>, Hartford Courant, at *B1 (CT) (Nov. 3, 2001) (quoting an interview with Petitioner).

prison camp." See Pet., Ex. C. Since both the F.C.I. Fort Dix and
F.C.I. Otisville are virtually identical "federal prison camps"
within the meaning of Judge Arterton's recommendation, and there is
no particular preference for placement of those convicted of
sixteen counts of racketeering, bribery, extortion, mail fraud and
tax fraud in Otisville rather than in Fort Dix of which this Court
is aware (and no such preferences are indicated by Petitioner),
this Court (a) fails to fancy how the "nature and circumstances of
Petitioner's offense" factor could be given any significant weight
by the BOP with respect to Petitioner's request for transfer, and
(b) refuses to demand from the BOP such consideration of a factor
which Petitioner himself fails to even outline and which this Court
itself cannot envision intelligibly.[8]

Therefore, Petitioner's argument that this Court unduly
overlooked the BOP's failure to consider Petitioner's
characteristics and the nature of his offense is without merit.

c.   The BOP's Communication to Petitioner

Petitioner also states that this Court unduly overlooked the
fact that the BOP failed to obey the mandate of § 3621(b) and the
directive of the Woodall Court when the BOP omitted to include in

---

[8]

    This Court, however, notes that this observation, specific to
the facts of the instant case, in no event indicates that the
"nature and circumstances of offense" factor cannot be important,
or even crucial, to a § 3621(b) analysis. For instance, in a case
of prison-to-CCC transfer, the factor plays a very significant
role. Accord Woodall, 432 F.3d 235.

the communication forwarded to Petitioner: (a) a reference to *each* of the six factors listed in § 3621(b); and (b) a statement explaining the rationale of the BOP's thinking process with respect to each factor in the fashion that Petitioner would be willing to qualify as both timely and adequate.  <u>See</u> Mot. at 5-7, and n. 1 (stating that the BOP's reasons must be detailed to Petitioner). This Court, however, did not overlook the issue; rather the court refused to read such an odd "reporting requirement" into the language of § 3621(b) or the holding of <u>Woodall</u>.[9] Indeed, it is entirely reasonable for the BOP to convey to the inmate only that part of the BOP's good-faith analysis of § 3621(b) factors that the BOP found significant enough to shape the BOP's good-faith decision (since it could clearly be of the inmate's legitimate concern), and do so in the terms that the BOP finds proper.  It would be contrary to the language of § 3621(b) and <u>Woodall</u> to rule that the BOP fails to conduct a good-faith analysis of § 3621(b) factors every time when only the key considerations are detailed to the inmate: such finding would make a mockery of the term "agency discretion."

---

[9]

Finding otherwise would (a) thwart the goal of the <u>Woodall</u> Court by turning a "good-faith" review into a mechanical pseudo-process, (b) unduly burden the agency and (c) invite a flood of meritless litigation about each the BOP's thought and/or each percentile.  The statutory provision, same as the Court of Appeals' holding in <u>Woodall</u>, is intended to operate as an even-handed mandate obligating the agency to perform its obligations diligently but protecting the agency from an undue harassment by recreational litigants.

**D.   Petitioner's Challenge to the Court's Power of Review**

Finally, Petitioner maintains that this Court erred by evaluating the factual evidence provided by Petitioner, since

> [all factual] determinations . . . must be made by the BOP, and although detailed in it[]s analysis, [these determinations are] not proper to be made by the Court . . . "[T]he court is not empowered to substitute its judgement for that of the agency." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402 (1971).

Mot. at 5.

The foregoing indicates that Petitioner is confused about the nature of judicial review and the holding of Citizens to Preserve Overton Park, 401 U.S. 402. A habeas petition filed by a petitioner in the district where the petitioner is confined provides him with the means to challenge the effect of events subsequent to imposition of his sentence. See Gomori v. Arnold, 533 F.2d 871, 874-75 (3d Cir. 1976). Examining such challenges, the Court is required to "hold unlawful and set aside [only those] agency actions, findings, and conclusions [which are] found to be . . . not in accordance with law." 5 U.S.C. § 706(2)(A). Therefore, this Court must: (1) determine whether the denial of Petitioner's request for transfer was a permissible construction and/or application of the regime set forth in § 3621(b); and (2) uphold the agency ruling if such construction was *permissible*. See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984) (outlining the two-step analysis to determine the

validity of an agency regulation and of application(s) of such regulation).   Essentially, this is an inquiry into the *reasonableness* of the BOP's interpretation or application.  <u>See</u>, <u>e.g.</u>, <u>Fujitsu Gen. Ltd. v. United States</u>, 88 F.3d 1034, 1038 (Fed. Cir. 1996).  Provided the BOP has acted reasonably, "the Court is not empowered to substitute its judgment for that of the agency." <u>Citizens to Preserve Overton Park v. Volpe</u>, 401 U.S. 402, 416 (1971), <u>overruled on other grounds by</u> <u>Califano v. Sanders</u>, 430 U.S. 99, 105 (1977).  Thus, the only review conducted by this Court is for abuse of discretion, <u>see</u> 5 U.S.C. § 706(2)(A), an inquiry limited by deference to the agency's finding, and such deference *presumes the validity of agency action*.  <u>See</u> <u>SBC Inc. v. FCC</u>, 414 F.3d 486, 496 (3d Cir. 2005).

Petitioner's circumstances are qualitatively different from those in <u>Woodall</u>, and this difference is not limited to the sole fact that the transfer in <u>Woodall</u> was from a prison facility to a CCC.  <u>Compare</u> Mot. at 12 (asserting that this difference is (a) the only one distinguishing the case from <u>Woodall</u>, and (b) irrelevant to the inquiry at bar).  In <u>Woodall</u> (a) the recommendations of the inmate's sentencing judge were *expressly not followed*, and (b) the regulations at issue *expressly prohibited* the BOP from consideration of the factors enumerated in 18 U.S.C. § 3621(b). <u>See</u> <u>supra</u>, Part III(A) (detailing the facts and holding of <u>Woodall</u>).  Thus, <u>Woodall</u> evidence either expressly verified lack of

the BOP's compliance with the enabling mandate of § 3621(b).

Conversely, in Petitioner's case, the facts of his own submissions indicate that: (1) the judicial recommendations were followed (since Petitioner was placed at Fort Dix); (2) Fort Dix is suitable for Petitioner's incarceration (since the correspondence between Petitioner and prison officials kept establishing such suitability frequently and consistently); (3) the applicable policy unambiguously discourages the type of transfer Petitioner sought; and (4) Petitioner's history, characteristics and nature of offense are of little relevance to the social goals of the transfer process.   See generally, Pet., Mem., Mot.   Yet Petitioner maintains, without having provided any indication that the BOP failed to conduct a good-faith analysis of § 3621(b) factors, "the Court [nonetheless] must . . . send this matter back to the BOP to re-evaluate the basis for denial of . . . Petitioner['s] request for transfer." Mot. at 5. Petitioner errs. The burden of proof rests with Petitioner, and Petitioner cannot shift the burden to the BOP. See Frisby v. United States Dep't of Housing & Urban Dev. (HUD), 755 F.2d 1052, 1055 (3d Cir. 1985) (stating that the burden of proof rests with the party challenging the validity of the agency's action).

Therefore, Petitioner's argument that this Court erroneously evaluating factual evidence provided by Petitioner is without merit.

**<u>CONCLUSION</u>**

This Court's July Order and July Opinion did not contain any manifest errors of law or fact upon which the judgment was based, and Petitioner neither presented any newly-discovered or previously unavailable evidence nor stated any grounds necessitating reconsideration in order to prevent manifest injustice or pointed to any intervening change in prevailing law. While Petitioner's Motion indicates Petitioner's disagreement with this Court's decision, such disagreement does not supply grounds for granting Petitioner's Motion. See <u>Harsco Corp.</u>, 779 F.2d at 909; <u>Assisted Living</u>, 996 F. Supp. at 442. Since this Court finds that Petitioner's Motion presented no matter overlooked in this Court's July Opinion and July Order, Petitioner's Motion is denied. <u>See Assisted Living</u>, 996 F. Supp. at 442.

An appropriate order accompanies this Opinion.


S/Robert B. Kugler
**ROBERT B. KUGLER**
**United States District Judge**

Date: September 28, 2006